United States District Court
Southern District of Texas
**ENTERED**
April 12, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GRUPO TAVA, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:20-CV-4133 |
| | § | |
| DMS CO., LTD., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

**I.   INTRODUCTION**

Pending before the Court is the defendant's, DMS Co., Ltd. ("DMS"), motion to dismiss pursuant to Rule 12(b)(6). (Dkt. 10). The plaintiff, Grupo Tava, LLC ("Grupo Tava"), has filed a response opposing the motion (Dkt. 13), and DMS has filed a reply in support (Dkt. 14).[1] After having carefully considered the parties' submissions and the applicable authorities, the Court determines that DMS's motion to dismiss should be **DENIED**.

**II.   FACTUAL AND PROCEDURAL BACKGROUND**

The Court takes the following well-pleaded facts as true. Grupo Tava, the plaintiff, is a Texas corporation with offices in the Woodlands, Texas. DMS, the defendant, is a limited liability company based in the Republic of Korea and organized under its laws.

In 2019, the defendant sought to bid on a public tender sponsored by the EXIM Bank of Korea (the EXIM Bank) on behalf of the Nicaraguan Ministry of Energy and Mines (the Ministry of Energy). The public tender solicited bids for the Renewable Energy Development in Rural Areas project (the RED Project), which involved installing and servicing approximately

---

[1] The Court will not consider arguments made in the plaintiff's sur-reply (Dkt. 15), which was filed without leave of court. *See* Court Procedures § VII.A.

10,000 solar panels in homes throughout Nicaragua. Pursuant to a Representative Agreement dated June 20, 2019 (the "Agreement"), the defendant engaged the plaintiff to provide services that included "soliciting available sales offers and public tenders throughout the competitive bidding process that would qualify for EXIM BANK KOREA financing" in Nicaragua. Under Section 2 of the Agreement, the defendant agreed to provide to the plaintiff "information or materials [of the defendant] . . . necessary or requested by [the plaintiff] for completion of the Services." The defendant also agreed, under Section 3, "to pay [the plaintiff] for the sales of winning a competitive bid" at "the time and in the amounts as provided on EXHIBIT A" to the Agreement. However, the parties never agreed as to the amount or structure of the plaintiff's compensation.

Prior to executing the Agreement, on a June 12, 2019 video conference, the defendant's Vice President, Kim Sung Woon (Kim), told the plaintiff's chief executive, Carlos Tamborrel, Sr., that the defendant had the capabilities and personnel to perform the RED Project. On June 18, 2019, the plaintiff sent the defendant a document to review that included the defendant's employees who would perform the RED Project. On June 20, 2019, Tamborrel and Kim met at the Barcelo Hotel in Managua, Nicaragua to review this and other documentation. Kim represented to Tamborrel that the seven employees whom the defendant intended to use for the RED Project were employed by the defendant and that each had 10 to 26 years of relevant experience.

Subsequently, the plaintiff helped the defendant organize and compile the information necessary for the tender's pre-qualification and technical proposal phases, and also advised the defendant on its bid pricing. On August 12, 2019, the Ministry of Energy announced that it would award the RED Project to the defendant, in the amount of $21,940,822.00. The Ministry

of Energy then asked the defendant to verify certain information contained in its technical proposal. On September 20, 2019, the defendant submitted information regarding its seven proposed project employees that did not match the information that the defendant had submitted in its initial bid offer. The later-provided information indicated that almost all the employees had far less relevant experience than the defendant had previously represented to the plaintiff, the EXIM Bank, and the Ministry of Energy. Following this revelation, the Ministry of Energy disqualified the defendant from the public tender process and awarded the RED Project to the next-lowest bidder. The plaintiff received no compensation from the defendant for the former's services.

On July 7, 2020, the plaintiff filed suit against the defendant in state court, alleging the following counts: (I) breach of contract; (II) fraudulent inducement; and (III) common law fraud. The defendant timely removed the case to this Court on December 1, 2020.[2] The plaintiff filed its First Amended Complaint on January 8, 2021, and the defendant filed its motion to dismiss pursuant to Rule 12(b)(6) on January 19, 2021.[3]

### III.   THE PARTIES' CONTENTIONS

In Count I, the plaintiff alleges that the defendant breached the Agreement by (i) failing to provide accurate and true information to the defendant in connection with the public tender, and (ii) by failing to pay the plaintiff, after the plaintiff had performed and the defendant "was awarded a winning bid on August 12, 2019." In Count II, the plaintiff alleges that, to induce the

---

[2] The plaintiff's removal documents indicate that the plaintiff attempted to serve the defendant through the procedures outlined in the 1965 Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters. While the docket does not indicate whether service was completed, the defendant has now waived any objection to insufficiency of process or lack of personal jurisdiction. *Resolution Trust Corp. v. Starkey*, 41 F.3d 1018, 1021 (5th Cir 1995) (citing Fed. R. Civ. P. 12(h)).

[3] In light of the plaintiff's First Amended Complaint, the defendant's motion to dismiss the plaintiff's Original Complaint is now moot.

plaintiff to represent it in the public tender, the defendant intentionally and materially misrepresented the experience of its personnel that would work on the RED Project. The plaintiff contends that it entered into the Agreement in reliance on these misrepresentations, was induced to submit the defendant's false information to the Ministry of Energy, and suffered reputational harm and lost business opportunities as a result. The plaintiff's common law fraud claim essentially repeats its fraudulent inducement claim.

The defendant argues that the plaintiff's contract claim fails because under the Agreement (i) the defendant did not warrant the completeness or accuracy of any information that it would provide the plaintiff and (ii) the defendant received no sales from any "winning bid," resulting in a failure of a condition precedent to any right of performance (*i.e.*, the right to payment from the defendant). The defendant contends that Count II should be dismissed because the plaintiff's fraud allegations lack the specificity required by Rule 9(b), or, alternatively, were made by the defendant after the Agreement's execution. As to both Count II and Count III, the defendant contends that the plaintiff cannot recover based on representations made to a third party (the Ministry of Energy). As to Count III, the defendant alleges that the plaintiff cannot establish detrimental reliance because detrimental reliance requires a party to undertake "an obligation in addition to the contractual obligations to which it had already agreed."

## IV.   STANDARD OF REVIEW

### a.   Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under the demanding strictures of a Rule 12(b)(6) motion, "[t]he plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Sec., Inc.*, 94 F.3d 189, 194 (5th Cir. 1996) (citing *Mitchell v.*

*McBryde*, 944 F.2d 229, 230 (5th Cir. 1991)). Dismissal is appropriate only if, the "[f]actual allegations [are not] enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed.2d 929 (2007). Moreover, in light of Federal Rule of Civil Procedure 8(a)(2), where a plaintiff does not allege fraud or mistake, "[s]pecific facts are not necessary; the [factual allegations] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200, 167 L. Ed.2d 1081 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964). Even so, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964– 65 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed.2d 209 (1986)).

In *Ashcroft v. Iqbal*, the Supreme Court expounded upon the *Twombly* standard, reasoning that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1955). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—

'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

Nevertheless, when considering a 12(b)(6) motion to dismiss, the Court's task is limited to deciding whether the plaintiff is entitled to offer evidence in support of his or her claims, not whether the plaintiff will eventually prevail. *Twombly*, 550 U.S. at 563, 127 S. Ct. at 1969 n.8 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed.2d 90 (1974)); *see also Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). The Court's review is limited to the allegations in the complaint and to those documents attached to a defendant's motion to dismiss, to the extent that those documents are referred to in the complaint and are central to the claims. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

**b.     Federal Rule of Civil Procedure 9(b)**

Rule 9(b) states that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The particularity required for such pleading, however, varies from case to case. *See Benchmark Elec., Inc. v. J.M. Huber Corp.,* 343 F.3d 719, 724 (5th Cir. 2003), *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.* at 724 (internal citations omitted). More precisely, Rule 9(b)'s particularity requirement compels that "the who, what, when, where, and how [] be laid out." *Id*. "Claims alleging . . . fraud [and] fraudulent inducement . . . are subject to [Rule 9(b)'s] requirements." *Frith v. Guardian Life Ins. Co. of Am.*, 9 F.Supp.2d 734, 742 (S.D. Tex. 1998).

V.   **DISCUSSION AND ANALYSIS**

The Court first addresses the defendant's motion to dismiss the plaintiff's fraudulent inducement and common law fraud claims.[4] Under Texas law, fraudulent inducement requires the existence of a contract as part of its proof; that is, the plaintiff must establish the elements of fraud as they relate to an agreement between the parties. *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015). To prevail on a claim for fraudulent inducement, a plaintiff must establish that (1) the defendant made a false material representation with knowledge that it was false when made, or that the defendant asserted without knowledge of its truth or falsity, (2) the defendant intended the misrepresentation to be acted on, (3) the plaintiff relied on the misrepresentation, and (4) the misrepresentation caused injury. *Anglo-Dutch Petroleum Int'l, Inc. v. Case Funding Network, LP*, 441 S.W.3d 612, 627 (Tex. App.—Houston [1st Dist.] 2014, pet. denied).[5] An alleged misrepresentation will support a fraudulent inducement claim only if the misrepresentation is "material." *Wyrick v. Tillman & Tillman Realty, Inc.*, NO. 03-00-00061-CV, 2001 Tex. App. LEXIS 973, at *5 (Tex. App.—Houston [1st Dist.] Feb. 15, 2001, no pet.). Materiality is an issue of causation and requires proof that the alleged misrepresentation induced the complaining party to act. *Id.* A representation, even if actually true, is actionable if it is used to create an impression that is substantially false. *Anglo-Dutch Petroleum*, 441 S.W.3d at 627 (internal citations omitted).

The Court finds that the plaintiff's allegations of fraud, at this stage of the proceedings, satisfy the particularity requirements of Fed. R. Civ. P. 9(b). It is undisputed that the parties entered into the Agreement. Further, the plaintiff's First Amended Complaint alleges that, prior

---

[4] In deciding the defendant's motion, the Court considers the terms of the Agreement, which is central to the plaintiff's claims and was attached to the defendant's motion to dismiss. *Causey*, 394 F.3d at 288.

[5] Common law fraud implicates the same elements but without the requirement of a contract. *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001).

to entering into the Agreement, the defendant provided materials to the plaintiff that represented the certifications and experience of its personnel that would work on the RED Project. The defendant's Vice President, Kim, made these representations during a video conference with the plaintiff's chief executive officer, Tamborrel, on June 12, 2019. Kim reaffirmed these representations on June 20, 2019, when he met with Tamborrel at the Barcelo Hotel in Managua, Nicaragua. In reliance on those representations, the plaintiff entered into the Agreement and performed the services outlined therein.

The First Amended Complaint plausibly alleges the falsity of the defendant's representations to the plaintiff regarding the experience levels of its personnel that were to work on the RED Project. Following the Ministry of Energy's initial award of the RED Project to the defendant, the defendant submitted information concerning its employees' experience that did not match its earlier submission, and, consequently, the Ministry disqualified the defendant from the public tender. These facts, together with Kim's repeated affirmations to Tamborrel prior to the parties' execution of the Agreement, also plausibly allege that the defendant either knowingly or recklessly misrepresented its employees' experience. The plaintiff alleges that the defendant's fraud harmed its reputation and resulted in lost business opportunities. Accordingly, the defendant's motion to dismiss the fraudulent inducement and common law fraud claims should be denied.[6]

---

[6] The Court appreciates the defendant's argument, with respect to the common law fraud claim, that the plaintiff cannot have detrimentally relied upon defendant's representations to do what it was already required to do under the Agreement. However, the nature of the parties' obligations under the Agreement is an issue better suited for determination at the summary judgment stage. Relatedly, the defendant argues that the economic-loss rule precludes the plaintiff from recovering benefit-of-the-bargain damages by its common law fraud claim. As the defendant concedes, however, not all losses are barred in fraud cases involving contracts. *See Bohnsack v. Varco, L.P.*, 668 F.3d 262, 276 (5th Cir. 2012). Accordingly, the economic loss rule does not warrant dismissal of the plaintiff's fraud claims at this stage.

The defendant also seeks a dismissal of the plaintiff's breach of contract claim, asserting that, under the Agreement, (i) the defendant did not warrant the completeness or accuracy of any information that it would provide the plaintiff and (ii) the plaintiff never obtained a right to payment because no "sales from a winning bid" ever materialized. The Court is of the opinion, however, that a reasonable expectation exists that discovery will reveal supplemental factual support for the plaintiff's claims. Such evidence may concern, for instance, the parties' understanding of: the public tender requirements, the parties' contractual obligations, and any course of dealing between the parties. At this juncture, when the plaintiff's allegations are taken as true and resolved in the light most favorable to the plaintiff, this Court finds that they constitute "more than labels and conclusions" and are sufficient to give the defendant "fair notice" of what they are and the grounds upon which they rest. Therefore, the Court cannot say that the plaintiff's allegations are insufficient to raise a right to relief above the speculative level. Accordingly, the defendant's motion to dismiss the plaintiff's contract claim is denied.

## VI.   CONCLUSION

Based on the foregoing, the defendant's motion to dismiss the plaintiff's First Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is hereby **DENIED**.

It is so **ORDERED**.

SIGNED on this 12th day of April, 2021.

_____
Kenneth M. Hoyt
United States District Judge